UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X

In the Matter of the Extradition of JUAN
FERNANDO URGILEZ SARMIENTO

                                    **ORDER**

                                    25 MJ 173 (CLP)

--------------------------------------------------------- X

**POLLAK**, United States Magistrate Judge:

On October 27, 2017, and again on February 6, 2018, Judge Ana Calle Romero of the

Multicompetent Criminal Judicial Unit, La Troncal Canton, Ecuador, issued an arrest warrant for

respondent Juan Fernando Urgilez Sarmiento ("Juan Fernando Urgilez Sarmiento" or "Urgilez

Sarmiento"). (See Gov't Mem.[1] at 5; Compl.,[2] Ex. A, Extradition Order at 113,[3] Arrest Warrants

at 154, 156). On or about May 2021, Ecuadorian authorities were alerted that Urgilez Sarmiento

was detained in the United States on immigration-related charges. (Compl., Ex. A, Interpol

Letter at 130-32). On December 6, 2021, Ecuador submitted to the United States a formal

extradition request for Urgilez Sarmiento, which was supplemented with additional documents

on July 17, 2023, July 15, 2024, and November 6, 2024. (Compl., Ex. A, Lindsay Decl.[4] at 3,

Diplomatic Notes at 5-9, Extradition Order at 117). The Department of State issued a declaration

attesting to the authenticity of Ecuador's submissions on November 14, 2024. (Compl., Ex. A,

Lindsay Decl. at 4).

The request for arrest and extradition submitted by the Government of Ecuador (the

---

[1] Citations to "Gov't Mem." refer to the Government's Memorandum of Law in Support of Extradition, filed on September 24, 2025. (ECF No. 13).

[2] Citations to "Compl." refer to the Complaint and Affidavit in Support of an Application for an Arrest Warrant, dated May 14, 2025. (ECF No. 1).

[3] Citations herein to Exhibit A include the title of the specific document within Exhibit A, with a page citation to the ECF-stamped page number of Exhibit A.

[4] Citations to "Lindsay Decl." refer to the declaration submitted by Amy Lindsay, Attorney Advisor in the Office of the Legal Adviser for the Department of State, Washington, D.C., dated November 14, 2024. (Compl., Ex. A).

"Requesting State"), dated December 6, 2021, charges Urgilez Sarmiento with rape, in violation of Article 171 of the Ecuadorian Criminal Code.  (Compl. ¶ 1, Ex. A, Diplomatic Note 4-2-235/2021 at 5).

On May 14, 2025, a Sealed Complaint was filed as to respondent Juan Fernando Urgilez Sarmiento (Compl.), and a warrant for his arrest was issued by United States Magistrate Judge James R. Cho (ECF No. 2).  On June 26, 2025, Urgilez Sarmiento was arrested in Brooklyn, New York, arraigned, and ordered detained.  (ECF No. 5).  The case was unsealed by the undersigned that same day.  (ECF No. 4).

Attached as Exhibit A to the Complaint are the following documents, among others, some in Spanish with English translations: the November 14, 2024 Lindsay Declaration; the 1872 Extradition Treaty between the United States and Ecuador; the 1939 Supplemental Treaty; Ecuador's December 6, 2021 extradition request to the United States Department of State, attaching supporting evidence, personal identifying information of the fugitive, legal documentation, and applicable Ecuadorian law; subsequent Diplomatic Notes from the Embassy of Ecuador dated July 17, 2023, July 15, 2024, and November 6, 2024, providing additional information as requested by the United States; certificates of authenticity of the extradition documents, signed by Michael J. Fitzpatrick, Ambassador of the United States in the Republic of Ecuador, on November 12, 2021 and July 5, 2023, and by Michael D. Ose, Consul General of the United States in the Republic of Ecuador, on June 20, 2024 and October 30, 2024; and other supporting documentation.  (Compl., Ex. A).

On September 4, 2025, Urgilez Sarmiento filed a Letter in Opposition to Extradition. (Opp. [5]).  The government responded on September 24, 2025 (Gov't Mem.), and respondent

---

[5] Citations to "Opp." refer to respondent's Letter in Opposition to Extradition, filed on September 4, 2025.

replied in further opposition to extradition on September 30, 2025 (Reply[6]).  This Court held a hearing on October 14, 2025 to determine whether the evidence of criminality presented by Ecuador was "sufficient to sustain the charge under the provisions of the proper treaty or convention . . . ."  See 18 U.S.C. § 3184; (see Minute Entry, dated October 14, 2025).

At the hearing, the government offered, and the Court admitted into evidence, the documents filed as Exhibit A to the Complaint.  (See ECF No. 1-1).  Respondent sought to offer into evidence an unauthenticated report he allegedly made to a prosecutor in Ecuador in which he claimed that the victim's mother was attempting to extort him.  (ECF No. 15).  He also offered to testify at the hearing as to the sequence of events.  The government opposed both the admission of the unauthenticated report and his request to testify at the hearing.  (ECF No. 16).  For the reasons discussed below, the Court denied respondent's request to testify and declined to admit respondent's proffered evidence.  (See Minute Entry, dated October 14, 2025).

After considering the documents presented by Ecuador and the arguments of both parties, the Court makes the following findings of fact and conclusions of law, and certifies to the Secretary of State that there is sufficient evidence to sustain the charge of rape against Urgilez Sarmiento under the provisions of the extradition treaty[7] between the United States and Ecuador.

DISCUSSION

I.    The Requirements for Extradition

Section 3184 of Title 18, United States Code provides:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, . . . any justice or judge of the United States, or any magistrate judge authorized so

---

(ECF No. 12).

[6] Citations to "Reply" refer to respondent's Letter in Reply to Government's Memorandum, filed on September 30, 2025.  (ECF No. 14).

[7] There is an extradition treaty in force between the United States and Ecuador. See discussion infra at 7.

> to do by a court of the United States, or any judge of a court of
> record of general jurisdiction of any State, may, upon complaint
> made under oath, charging any person found within his
> jurisdiction, with having committed within the jurisdiction of any
> such foreign government any of the crimes provided for by such
> treaty or convention, . . . issue his warrant for the apprehension of
> the person so charged, that he may be brought before such justice,
> judge, or magistrate judge, to the end that the evidence of
> criminality may be heard and considered. . . .  If, on such hearing,
> he deems the evidence sufficient to sustain the charge under the
> provisions of the proper treaty or convention, . . . he shall certify
> the same, together with a copy of all the testimony taken before
> him, to the Secretary of State, that a warrant may issue upon the
> requisition of the proper authorities of such foreign government,
> for the surrender of such person, according to the stipulations of
> the treaty or convention . . . .

18 U.S.C. § 3184.  Thus, in order to issue a certificate of extraditability, the examining judicial

officer is required to hold a hearing to determine if the person before the court is subject to

surrender under the terms of the treaty at issue and the relevant law.  See In re Extradition of

Chan Hon-Ming, No. 06 MJ 296, 2006 WL 3518239, at *3 (E.D.N.Y. Dec. 6, 2006).  In

conducting its inquiry in an extradition proceeding, the Court "does not determine the ultimate

guilt or innocence of the individual whose extradition is sought."  United States v. Amabile, No.

14 MJ 1043, 2015 WL 4478466, at *8 (E.D.N.Y. July 16, 2015) (quoting In re Extradition of

Chan Hon-Ming, 2006 WL 3518239, at *3); see also United States v. Pena-Bencosme, No. 05

MJ 1518, 2006 WL 3290361, at *2 (E.D.N.Y. Nov. 13, 2006); In re Extradition of Orellana, No.

00 CR Misc. 1, 2001 WL 266073, at *4 (S.D.N.Y. Mar. 15, 2001).

However, the court must determine if:  (1) there is a valid extradition treaty between the

requesting country and the United States; (2) there are criminal charges pending in the requesting

state against the extraditee and the required documentation has been submitted to the court; (3)

the charges are extraditable offenses under the treaty and dual criminality has been established (if

required by the treaty); (4) there is probable cause to believe that the crime was committed by the

4

person before the court based on competent legal evidence presented to the court; and (5) the individual before the court is actually the person sought by the authorities of the foreign state. See United States v. Samuels, No. 08 MJ 445, 2009 WL 367578, at *3 (E.D.N.Y. Feb. 10, 2009); In re Extradition of Chan Hon-Ming, 2006 WL 3518239, at *3; In re Extradition of Waters, No. 03 M 1072, 2003 WL 23615666, at *2 (E.D.N.Y. Nov. 24, 2003); In re Extradition of Orellana, 2001 WL 266073, at *3; United States v. Barr, 619 F. Supp. 1068, 1070 (E.D. Pa. 1985); see also Matter of Extradition of Lalama Gomez, 755 F. Supp. 3d 220, 226 (E.D.N.Y. 2024) (certifying extradition based on analysis of these factors), habeas corpus petition denied sub nom. Lalama Gomez v. United States, No. 24 CV 7850, 2025 WL 458260 (E.D.N.Y. Feb. 11, 2025), aff'd sub nom. Gomez v. United States, 140 F.4th 49 (2d Cir. 2025).  In addition, the court must certify that it has jurisdiction over the fugitive and that the judicial officer is authorized to conduct extradition proceedings.  See Ornelas v. Ruiz, 161 U.S. 502, 508-09 (1896); see also Bingham v. Bradley, 241 U.S. 511, 516-17 (1916); McNamara v. Henkel, 226 U.S. 520, 523 (1913); In re Extradition of Medina Rodriguez, No. 08 MJ 770, 2009 WL 393638, at *3 (E.D.N.Y. Feb. 13, 2009).

Thus, the inquiry is a "narrow" one, and an extraditee's right to challenge the evidence is limited to explaining but not contradicting the proof presented by the foreign state.  See Shapiro v. Ferrandina, 478 F.2d 894, 901 (2d Cir. 1973); United States v. Amabile, 2015 WL 4478466, at *8; In re Extradition of Skaftouros, 643 F. Supp. 2d 535, 543 (S.D.N.Y. 2009); United States v. Pena-Bencosme, 2006 WL 3290361, at *2-3.  Thus, in challenging an extradition request, the respondent may not present evidence to impeach the witnesses' statements, see Germany v. United States, No. 06 CV 1201, 2007 WL 2581894, at *8 (E.D.N.Y. Sept. 5, 2007); to establish an alibi, see Abu Eain v. Adams, 529 F. Supp. 685, 691 (N.D. Ill. 1980); or to raise a defense of

insanity, see Charlton v. Kelly, 229 U.S. 447, 462 (1913).  See also United States v. Amabile, 2015 WL 4478466, at *8; In re Extradition of Skaftouros, 643 F. Supp. 2d at 543.

Moreover, hearsay is admissible at an extradition hearing.  Collins v. Loisel, 259 U.S. 309, 317 (1922); Simmons v. Braun, 627 F.2d 635, 636 (2d Cir. 1980); United States v. Amabile, 2015 WL 4478466, at *9.  Thus, the certificate of extradition may be based on written statements provided by a foreign prosecutor, investigator, or judge, see Rice v. Ames, 180 U.S. 371, 375-76 (1901); Bovio v. United States, 989 F.2d 255, 259-61 (7th Cir. 1993); United States v. Amabile, 2015 WL 4478466, at *9, on authenticated documenting evidence, or on sworn corroborated statements of cooperating witnesses, see Eain v. Wilkes, 641 F.2d 504, 509-11 (7th Cir. 1981). See also United States v. Amabile, 2015 WL 4478466, at *9.  Live witnesses are not required. Yordi v. Nolte, 215 U.S. 227, 231 (1909); In re Shapiro, 352 F. Supp. at 647; United States v. Amabile, 2015 WL 4478466, at *9.

II.   Jurisdiction

In this case, the Court certifies that it has personal jurisdiction over respondent Urgilez Sarmiento based upon his arrest in the Eastern District of New York and his presence before this Court.  See In re Extradition of Medina Rodriguez, 2009 WL 393638, at *3 (citing In re Extradition of Pazienza, 619 F. Supp. 611, 616 (S.D.N.Y. 1985)) (holding that the court possessed personal jurisdiction over the respondent based on his arrest within the Eastern District of New York and his presence before the court).  Similarly, there is no dispute that this Court is authorized to hear this extradition proceeding.  See Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Criminal Rule 59.1(b) (providing that "[m]agistrate judges are hereby authorized to exercise the jurisdiction set forth in 18 U.S.C. § 3184"); In re Extradition of Chan Hon-Ming, 2006 WL 3518239, at *3 n.5.

Currently there is an extradition treaty in force between the United States and Ecuador. See Extradition Treaty Between the United States of America and the Republic of Ecuador, U.S.-Ecuador, June 28, 1872, 18 Stat. 756, as amended by, the Supplementary Extradition Treaty Between the United States of America and Ecuador, U.S.-Ecuador, Sept. 22, 1939, 55 Stat. 1196 (together, the "Treaty"). There is also no dispute that the Treaty is in full force between the United States and Ecuador, as attested to by Amy Lindsay, Attorney-Advisor in the Office of the Legal Adviser for the Department of State. (Compl., Ex. A, Lindsay Decl. 3). See United States v. Amabile, 2015 WL 4478466, at *9 (citing Galanis v. Pallanck, 568 F.2d 234, 239 (2d Cir. 1977)) (noting that while not controlling, the Department of State's view on this issue is entitled to respect); see also In re Kuri, No. 04 M 6049, 2006 WL 1663536, at *3 (D. Ariz. June 14, 2006) (same). Just recently, in the Matter of Extradition of Lalama Gomez, this Court concluded that the treaty is in full force and effect between the United States and Ecuador, based on a declaration from the United States Department of State to that effect, and given that respondent did not challenge the treaty's existence or applicability. 755 F. Supp. 3d at 229.

In addition, there is no dispute that the documents received from Ecuador have been properly authenticated under 18 U.S.C. § 1390, having been certified by Michael J. Fitzpatrick, Ambassador of the United States in the Republic of Ecuador, on November 12, 2021 and July 5, 2023, and by Michael D. Ose, Consul General of the United States in the Republic of Ecuador, on June 20, 2024 and October 30, 2024. (Compl., Ex. A, Lindsay Decl. 4). Their certificates establish that the documents provided would be admissible in Ecuadorian courts for similar purposes. (Compl., Ex. A, Fitzpatrick Cert. at 19, 180, Ose Cert. at 202, 213). See In re Extradition of Chan Hon-Ming, 2006 WL 3518239, at *7 (holding that the certificate of the consular officer "is conclusive on the propriety and legality of the underlying authentications"

(citations omitted)).

Finally, neither party raises a statute of limitations issue that might preclude this Court's review.

III.    <u>Applicability of Treaty</u>

The crime charged in the warrant is an offense covered by the Treaty, giving rise to an extradition obligation. Specifically, Article I of the Treaty provides for the extradition of "such persons as may have been convicted of or may be accused of the crimes set forth in the following article." (Compl., Ex. A, Treaty, Article I at 10). Here, respondent Urgilez Sarmiento is charged with rape. (<u>See</u> Compl. ¶ 1, Ex. A, Diplomatic Note 4-2-235/2021 at 5). The government argues that this charge is listed as an extraditable offense in Item 2 of Article II of the Treaty. (<u>See</u> Gov't Mem. at 14; Compl., Ex. A, Treaty, Article II at 11). Respondent Urgilez Sarmiento attempts to argue that rape is not an extraditable offense because he allegedly committed the offense on land rather than on a ship. (Opp. at 5).

In interpreting the language and meaning of the Treaty, the Court notes that, "in fulfilling its duty under Section 3184, the Court is obliged to liberally construe the applicable extradition treaty to effectuate the purpose of the treaty: the surrender of fugitives to the requesting country." <u>Matter of Extradition of Lalama Gomez</u>, 755 F. Supp. 3d at 229 (citing <u>Factor v. Laubenheimer</u>, 290 U.S. 276, 303 (1933) (holding that "[e]xtradition treaties are to be liberally, not strictly, construed")). Moreover, in analyzing the meaning of the relevant provision, the Court looks to the interpretation of the parties to the Treaty. How the nations that are parties to an extradition treaty interpret that treaty is "entitled to great weight." <u>Matter of Extradition of Rabelbauer</u>, 638 F. Supp. 1085, 1088 (S.D.N.Y. 1986) (citing <u>Factor v. Laubenheimer</u>, 290 U.S. at 295); <u>see also</u> <u>Sumitomo Shoji Am., Inc. v. Avagliano</u>, 457 U.S. 176, 184-85 (1982) (stating

that, "[a]lthough not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight").

In its Extradition Order, the National Court of Justice of Ecuador specifically found that "[t]he crime of rape, which is the subject of the extradition request, is described in Article 2, number 2 of the Extradition Treaty between the Republic of Ecuador and the United States." (Compl., Ex. A, Extradition Order at 113-14).[8]  Similarly, the Lindsay Declaration states that "[t]he offense for which extradition is sought is covered by Article 2nd, Item [] 2nd . . . of the Treaty."  (Compl., Ex. A, Lindsay Declaration at 4); see also Matter of Extradition of Lalama Gomez, 755 F. Supp. 3d at 230 (certifying extradition under Article II, Item 2 for a fugitive

---

[8] The Court notes that the relevant sentence in the Extradition Order states in full: "[t]he crime of rape, which is the subject of the extradition request, is described in Article 2, number 2 of the Extradition Treaty between the Republic of Ecuador and the United States of America in 1872, and Article I, number 11, of the Complementary [or Supplemental] Treaty concluded in 1939."  (Id.)  Article I, Item 11, of the Supplemental Treaty states in full:

> The High Contracting Parties agree that the following crimes are added to the list of crimes numbered 1st to 6th in the second Article of the Treaty of Extradition concluded between the United States of America and the Republic of Ecuador on June 28, 1872; that is to say:
>
> . . . 11th. Abduction or detention of women or girls for immoral purposes.
>
> . . . The extradition for the crimes or misdemeanors specified in the paragraphs 7 to 21 will be granted when the individual required is accused or condemned as author, accomplice or concealer of an infraction of the Penal Code, punishable in the United States and Ecuador with a penalty of not less than one year in prison.

(Compl., Ex. A, Supplemental Treaty at 16-17).  Items 7 through 21 of the Supplemental Treaty therefore require dual criminality.  (Id. at 17).  Although the National Court of Justice of Ecuador states that "the crime of rape" is described in both the 1872 Treaty and the Supplemental Treaty (Compl., Ex. A, Extradition Order at 114), which raises the question of whether a dual criminality analysis is required, the Court determines it is not necessary to proceed through a dual criminality analysis, for several reasons.  First, "the crime of rape" is explicitly included in the 1872 Treaty, whereas "[a]bduction or detention of women or girls for immoral purposes" in the Supplemental Treaty is much broader and vaguer, and may or may not apply to the facts of this case – although that is not for this Court to decide.  Second, neither party attempts to argue that a lack of dual criminality means the Treaty does not apply.  (See Gov't Mem. at 15-16 n.6; see also Opp.; Reply).  Third, at least one court in this district has held that it need not conduct a dual criminality analysis on an extradition petition where the Ecuadorian fugitive was charged with "sexual abuse," because "the crime of rape" was listed explicitly in the 1872 Treaty.  Matter of Extradition of Lalama Gomez, 755 F. Supp. 3d at 231 n.2.

charged with sexual abuse, in part in deference to statements by Attorney Amy Lindsay and Ecuador's National Court of Justice); <u>Cordero-Rezabala v. United States</u>, No. CV 24-4010, 2024 WL 1673366, at *4 (D.N.J. Apr. 18, 2024) (denying petitioner's habeas petition challenging whether the Ecuadorian extradition treaty covers sexual abuse in part because "[t]he Court gives Attorney Lindsay's declaration deference").  The Court defers to Attorney Lindsay's Declaration and the National Court of Justice in Ecuador and finds that the crime respondent was charged with – rape – is an extraditable offense.

Respondent Urgilez Sarmiento attempts to argue that under the provision of the Treaty referring to the crime of rape, the language limits extradition to those instances where the rape is committed on a ship, and thus, in his case, the crime he is alleged to have committed is not an extraditable offense because he allegedly committed it on land rather than on a ship.  (Opp. at 5). Respondent cites the text of Article II, Item 2, which states in full:

> Persons convicted of or accused of any of the following crimes shall be delivered up, in accordance with the provisions of this treaty:
>
> . . . 2nd. The crime of rape, arson, piracy, and mutiny on ship-board when the crew, or a part thereof, by fraud or violence against the commanding officer, have taken possession of the vessel.

(Compl., Ex. A, Treaty, Article II at 11).  Respondent argues that the "plain and correct reading" of the Treaty is that the final phrase – "on shipboard when . . . of the vessel" – applies to *each* of the crimes listed in Item 2, not just to mutiny.  (Opp. at 5).  Thus, under respondent's interpretation, rape, arson, and piracy are only extraditable when they occur on a vessel.  (Id.)  In support of this theory, respondent waxes poetic about the rich seafaring history of the Galapagos Islands, an archipelago in Ecuador.  (Id.)  Respondent posits that because "so much of [Ecuador's] economy was based on maritime business" back when the United States and

Ecuador entered into the 1872 Treaty, the countries "were more worried about what [crimes] happened on ships" rather than on land; therefore, they would not have considered "[l]esser crimes like an assault" to be "serious enough to be extraditable" if committed on land.  (Id.)

Although Article II may be inelegantly drafted, respondent's interpretation is illogical – textually, practically, and in light of past and recent case law.  First, the final phrase, "on ship-board when the crew, or a part thereof, by fraud or violence against the commanding officer, have taken possession of the vessel," must modify only "mutiny" because it is the definition of mutiny.  Not only has respondent failed to cite a single authority in support of this strained interpretation, but to hold that rape is extraditable only if it occurs on a ship when the crew fraudulently or violently wrests control from the captain borders on the absurd.

Second, respondent's interpretation contradicts established rules of construction for extradition treaties.  The Second Circuit recently reiterated that, "'if [an extradition] treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred.'"  Gomez v. United States,[9] 140 F.4th at 56 (alteration in original) (quoting Factor v. Laubenheimer, 290 U.S. 276).  Respondent asks the Court to drastically narrow the extraditable offense of rape, beyond what any court has done before.  As far as this Court is aware, in the over 150 years that the Treaty has been in effect, no court has ever interpreted "rape" under the Treaty to be extraditable only if committed on a ship, nor even distinguished between rape on land and rape at sea for purposes of

---

[9] The Court reiterates the procedural history of Gomez v. United States to clarify that "Lalama Gomez" and "Gomez" refer to the same case and facts.  The case was initially before Magistrate Judge Eshkenazi, who certified the extradition of fugitive Mario Enrique Lalama Gomez to the Secretary of State.  Matter of Extradition of Lalama Gomez, 755 F. Supp. 3d 220.  The fugitive filed a habeas corpus petition seeking to invalidate the extradition order and block his extradition, which District Judge Amon denied.  Lalama Gomez v. United States, 2025 WL 458260.  In both district court-level cases, the case-caption referred to the fugitive as "Lalama Gomez."  However, on appeal to the Second Circuit, the case caption was shortened to "Gomez."  See Gomez v. United States, 140 F.4th 49.

the Treaty.  Indeed, the Second Circuit recently affirmed the denial of a fugitive's habeas corpus petition, concluding that other sexual abuse crimes committed on land were encompassed within "the crime of rape" in Article II of the Treaty.  Id. (affirming magistrate judge's finding that the sexual abuse of a 10-year-old girl in her home fell within the Treaty's crime of rape and was extraditable).  In rendering its decision, the court made no distinction as to *where* such crimes needed to take place in order to be extraditable.  See id.; see also Cordero-Rezabala v. United States, 2024 WL 1673366, at *3-4 (denying fugitive's habeas corpus petition in case involving the alleged sexual abuse of a victim in her paternal grandmother's house, where the fugitive challenged Article II's coverage of crimes of sexual abuse and noting, without referring to or limiting coverage to a vessel, that "[e]xtraditable crimes under the Extradition Treaty include rape and attempt to commit such rape").

In the instant case, respondent was charged with rape, which is explicitly listed in the Treaty.  Given that the Gomez and Cordero-Rezabala courts interpreted Article II, Item 2 of the Treaty broadly enough to include "sexual assault" within the umbrella of "rape," without any reference to the purportedly limiting language cited by respondent, this Court sees no basis on which to restrict the application of Article II, Item 2 to only rape on a boat.

Third, and relatedly, respondent's interpretation ignores established, binding Second Circuit case law interpreting Article II, Item 2 of the Treaty and extraditing Ecuadorian citizens for rape or sexual abuse committed on land.  Notably, the alleged sexual crimes in both Gomez and Cordero-Rezabala occurred on land, and in each case the crime was deemed an extraditable offense.  See Matter of Extradition of Lalama Gomez, 755 F. Supp. 3d at 232; Cordero-Rezabala v. United States, 2024 WL 1673366, at *4.  Respondent does not even attempt to distinguish these cases but merely argues that Gomez was "wrongly decided" and that it did not address

respondent's particular argument.  (Opp. at 4).  The Court rejects this view and further notes that that <u>Gomez</u> is binding precedent.

Accordingly, the Court concludes that because the crime charged comports with the offense covered by the Treaty, extradition is required if the other prongs of the test are satisfied.

IV.  <u>Probable Cause</u>

It is well-established that extradition hearings are in the nature of a probable cause or preliminary hearing, where the judicial officer does not inquire into the ultimate guilt or innocence of the fugitive, but rather determines whether the foreign country has presented sufficient competent legal evidence to support a finding of probable cause to believe that the fugitive is guilty.  <u>See</u> <u>Collins v. Loisel</u>, 259 U.S. at 316; <u>Lo Duca v. United States</u>, 93 F.3d 1100, 1104 (2d Cir. 1996); <u>In re Extradition of Ben-Dak</u>, No. 06 Mag. 1540, 2008 WL 1307816, at *3 (S.D.N.Y. Apr. 11, 2008).  "'Courts have long understood that the hearing before the extradition magistrate does not determine the guilt or innocence of the accused but rather represents a judgment whether there is competent evidence that would support a reasonable belief that the subject of the proceedings was guilty of the crimes charged.'"  <u>In re Extradition of Szepietowski</u>, No. 08 MJ 971, 2009 WL 187568, at *8 (E.D.N.Y. Jan. 23, 2009) (quoting <u>Gill v. Imundi</u>, 747 F. Supp. 1028, 1038 (S.D.N.Y. 1990)).

"Under federal law, probable cause exists where there is 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"  <u>In re Extradition of Ben-Dak</u>, 2008 WL 1307816, at *3 (quoting <u>United States v. Howard</u>, 489 F.3d 484, 491 (2d Cir. 2007), <u>cert. denied</u>, 552 U.S. 1005 (2007)).  While hearsay statements are admissible and competent evidence in making a probable cause determination for extradition purposes (<u>see</u> discussion

supra at 6), mere "[c]onclusory statements do not satisfy the probable cause standard." In re

Extradition of Szepietowski, 2009 WL 187568, at *8 (quoting United States v. Fernandez-

Morris, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999)); accord In re Extradition of Fulgencio

Garcia, 188 F. Supp. 2d 921, 932 (N.D. Ill. 2002) (noting that "where charges amount to mere

conclusory allegations unsupported by substantive evidence, extradition will be denied").

Indeed, "a court must 'closely examine the requesting country's submissions to ensure that any

hearsay bears sufficient indicia of reliability to establish probable cause.'" In re Extradition of

Skaftouros, 643 F. Supp. 2d at 543 (quoting In re Extradition of Ben-Dak, 2008 WL 1307816, at

*4).

     Where there has been a conviction and an adjudication of guilt in the requesting country,

there is no need to make an independent determination of probable cause. See Spatola v. United

States, 925 F.2d 615, 618 (2d Cir. 1991). In such a circumstance, the magistrate judge may rely

on certified copies of a judgment of conviction or appellate court opinion. See id. Otherwise,

the magistrate judge is required to "exercise their independent judgment . . . to determine the

propriety of an individual's extradition," Ahmad v. Wigen, 726 F. Supp. 389, 412 (E.D.N.Y.

1989), and "may conclude, on review of the affidavits submitted, that there are insufficient

indicia of reliability or credibility to establish probable cause," In re Extradition of Singh, 124

F.R.D. 571, 577 (D.N.J. 1987) (emphasis omitted). In exercising its judgment, "a judicial officer

should consider the 'totality of the circumstances' and 'make a practical, common-sense

decision' whether the evidence is sufficient to sustain a finding of probable cause." In re

Ribaudo, No. 00 Crim. Misc. 1PG, 2004 WL 213021, at *5 (S.D.N.Y. Feb. 3, 2004) (quoting

Illinois v. Gates, 462 U.S. 238-40 (1983)); see also In re Extradition of Chan Hon-Ming, 2006

WL 3517239, at *7.

In this case, based on the government's submissions and oral arguments made at the extradition hearing, the Court makes the following findings of fact.  Based on information provided by the Ecuadorian government, on May 25, 2017, around 2:00 p.m., the victim's mother, Sandra de la Nube Sicha-Saca ("Sicha-Saca"), hired the respondent, her cousin's husband, to drive her to La Troncal, Ecuador, in his taxi.  (Compl., Ex. A, Probable Cause for Extradition Report at 170). After he dropped her off, the respondent called Sicha-Saca, telling her that his father wanted to repay a $500 loan.  (Id.)  They met, and he returned the money, inviting her and a friend for a beer at the Bulu Bulu River Cabins.  (Id.)

Around 4:00 p.m., the then-11-year-old victim called her mother to ask for a ride.  (Id.)  The mother asked the respondent to pick up the daughter, which he did, although it took him almost two hours to return.  (Id.)  Upon returning, the victim sat next to the respondent, and when her mother noticed him holding the victim's hand under the table, she confronted him about it.  (Id.)  He minimized the situation, but the mother was upset:  her daughter was a minor, and the respondent was married to her cousin.  (Id.)  She then took her daughter home.  (Id.)

The mother testified that, the day after the alleged incident, she took the victim to a psychologist and a gynecologist.  (Id. at 170-71).  According to the mother, the psychologist, Joan Cierra "at the clinic of Dr. Valle," reported the victim was "in love" with the respondent (id. at 170), and the gynecologist, "a doctor working in the Ladies' consulate foundation," found the girl "was no longer a virgin" and had a "serious vaginal infection" (id. at 171).[10]  That night, the

---

[10] The Court notes there are no psychological or gynecological reports for these exams attached to the extradition request, nor other evidence corroborating the mother's testimony as to these examinations.  However, it is well-established that in the context of an extradition proceeding the requesting state is not required to produce all of the evidence in its possession or establish the defendant's guilt beyond a reasonable doubt.  E.g., United States v. Pena-Bencosme, 2006 WL 3290361, at *7 (citing Austin v. Healey, 5 F.3d 598, 605 (2d Cir. 1993)); Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986).  The standard is one of probable cause.  See, e.g., Gomez v. United States, 140 F.4th at 54; Charlton v. Kelly, 229 U.S. at 449.

victim disclosed to her mother that she had had sexual intercourse with the respondent and was in a relationship with him.  (Id.)

Approximately two and a half months later, the mother took her daughter to be examined by a different medical provider and a different psychologist.  (Id.)  As noted in the report dated August 8, 2017 and referenced in the extradition request, this second gynecological exam was performed by medical examiner Dr. Robert Homero Burbano Llerena, who concluded there were signs of vaginal penetration and infection.  (Id. (citing Gynecological Report No. 030-2017-DML-RHBLL)).  The second psychological evaluation, conducted by Dr. Diana Alexandra Guayara Chacha, revealed the victim felt guilt, low self-esteem, and anxiety.  (Id. at 172).  Dr. Guayara Chacha noted "the minor does not show a psychological disorder but that does not mean there was no sexual assault" and recommended psychological therapy.  (Id. at 143, 172).

On October 2, 2017, the victim spoke to investigators, confirming that her birth date matched her Ecuadorian ID, which showed she was 11 at the time of the alleged crime.  (Id. at 172-73).  She recounted that the respondent picked her up in a cab and, after driving for a short time, asked her to move from the back seat to the front seat, where he expressed his love for her and said he did not love his wife but was staying with her only for their child's sake.  (Id. at 172).  He then drove to the Maria Teresa district of La Troncal, where he propositioned the victim for sexual intercourse, and she agreed.  (Id.)  Afterward, he promised to leave his wife and told the child that he would "take me away when I turn 18."  (Id.)

Ecuadorian investigators identified the alleged crime scene as an abandoned banana packing plant in Maria Teresa, where the victim pointed out a table as the location of the intercourse with respondent.  (Id. at 171-72).  The area was noted to be "uninhabited," with no street lighting and minimal vehicle or foot traffic.  (Id. at 172).

16

A.  <u>Admissibility of Defendant's Proffered Testimony</u>

The function of the judge at an extradition hearing is "to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."  <u>Collins v. Loisel</u>, 259 U.S. 309, 316 (1922).  At an extradition hearing, a court is required to rule on the admissibility of any "'explanatory testimony'" or evidence offered by the fugitive.  <u>See Matter of Extradition of Leon Heras</u>, No. 22 MJ 271, 2022 WL 17740191, at *2 (E.D.N.Y. Dec. 16, 2022) (quoting <u>Messina v. United States</u>, 728 F.2d 77, 80 (2d Cir. 1984)).  However, it is well-established that extradition proceedings may not be "converted into a dress rehearsal trial," and thus the court may not make credibility determinations.  <u>See</u> <u>Jhirad v. Ferrandina</u>, 536 F.2d 478, 484 (2d Cir. 1976); <u>see also</u> <u>Collins v. Loisel</u>, 259 U.S. at 316.  Therefore, while "explanatory testimony" is permitted, the fugitive "'may not offer proof which <i>contradicts</i> that of the demanding country.'"  <u>See</u> <u>Matter of Extradition of Leon Heras</u>, 2022 WL 17740191, at *2 (emphasis added) (quoting <u>Messina v. United States</u>, 728 F.2d at 80); <u>see also</u> <u>In re Shapiro</u>, 352 F. Supp. 641, 645 (S.D.N.Y. 1973) (holding that the "fugitive's right is limited to adducing evidence which explains rather than contradicts the supporting proof").  Innocence is not a defense in an extradition proceeding.  <u>See</u> <u>Gomez v. United States</u>, 140 F.4th at 57 (citing <u>Melia v. United States</u>, 667 F.2d 300, 302 (2d Cir. 1981)).

At the hearing, respondent's attorney attempted to explain and contextualize the government's submissions.  In arguing that the government's submissions failed to establish probable cause, counsel sought to admit evidence suggesting that the victim's mother, Sicha-Saca, was extorting respondent.  Specifically, respondent's attorney attempted to admit an

unauthenticated[11] copy of a report that respondent allegedly filed with a local prosecutor in Ecuador in August 2017 in which he claimed that the victim's mother threatened to report him for sexually assaulting her daughter if he refused to pay her several thousand American dollars. (See ECF No. 15).  In addition to offering this report, respondent also requested permission to testify before the Court that there is only one explanation for the almost-three-month delay between the alleged crime and the second gynecological and psychological examinations that are corroborated by reports referenced in the extradition request:  that the victim was lying about the assault, and the victim's mother was trying to extort him.  Respondent argues that no evidence corroborates the rape aside from the testimony of the victim, who was 12 years old at the time she spoke to investigators.  He further contends that the only explanation for the delay in the victim's physical and psychological examinations is that the victim was lying about what occurred and that when a person is so obviously lying, their word alone cannot support probable cause.  Based on these arguments, respondent asserts that the government's evidence fails to satisfy the burden of proof necessary to extradite respondent.  (Opp. at 7; Reply at 1-2).

    In opposing the admission of the respondent's unauthenticated report to a local prosecutor in Ecuador and the request by respondent to offer testimony in the extradition hearing before the Court, the government argued that both "inevitably contradict[] the evidence put forth by Ecuador," and that any determinations of the credibility of the victim or her mother should "'properly await trial in [the country seeking extradition].'"  (ECF No. 16 at 2 (quoting Kapoor v. Dunne, 606 F. App'x 11, 12-13 (2d Cir. 2015))).

    During the October 14th hearing, the Court declined to admit the copy of the alleged

---

[11] "Although courts are not bound by the Federal Rules of Evidence in extradition proceedings, 18 U.S.C. § 3190 requires that any proffered evidence 'be properly and legally authenticated[.]'" Matter of Extradition of Lalama Gomez, 755 F. Supp. 3d at 228 (quoting 18 U.S.C. § 3190).

report (see ECF No. 15), and to hear defendant's testimony regarding the chronology of when the alleged crime occurred compared to when the victim was gynecologically and psychologically examined.  (See Minute Entry, dated October 15, 2025).  The Court agrees with the government's arguments in opposition to respondent's proffered evidence:  both the report and respondent's testimony raise issues of credibility and are offered to contradict the evidence offered by Ecuador, and thus cannot be considered by the Court on this extradition petition.

Respondent's first argument that probable cause cannot exist because the only evidence is the testimony of a 12-year-old girl, whom he alleges must be lying due to a delay in reporting the alleged rape, explicitly asks the Court to determine the credibility of the victim, which the Court may not do in this proceeding.  See Germany v. United States, 2007 WL 2581894, at *8 (holding that respondent may not present evidence to impeach the witnesses' statements); see also Jhirad v. Ferrandina, 536 F.2d at 484 (holding that the court may not make credibility determinations in an extradition proceeding); United States v. Hunte, No. 04 M 0721, 2006 WL 20773, at *6 (E.D.N.Y. Jan. 4, 2006) (holding that "[e]vidence submitted in support of an extradition request is deemed truthful and its credibility generally may not be challenged at an extradition hearing"); Matter of Extradition of Hyuk Kee Yoo, No. 20 Mag. 2252, 2021 WL 2784836, at *7 (S.D.N.Y. July 2, 2021) (holding that credibility issues "are reserved for trial" in the requesting state). Without making any determination on the credibility of this particular victim, the Court notes that it is not uncommon for victims to delay reporting a sexual assault, and that such a delay does not necessarily undermine the victim's credibility or negate probable cause.  For example, in cases where a sexual assault victim delayed in reporting the crime, courts in the Second Circuit have generally accepted the victim's explanation for the delay when supported by evidence of trauma, fear, or societal factors.  See, e.g., Carroll v. Trump, 124 F.4th 140, 151 (2d Cir. 2024)

(contextualizing the victim's decision to report decades later within the broader societal movement against sexual assault); Doe v. United States, 76 F.4th 64, 71-73 (2d Cir. 2023) (allowing equitable tolling of the statute of limitations due to the victim's credible fear of retaliation and psychological impact, which had led her to delay in reporting the sexual assaults); United States v. Braun, No. 10 CR 433, 2025 WL 2576704, at *8-9 (E.D.N.Y. Sept. 5, 2025) (finding the victim's initial reluctance to disclose details about the sexual assault consistent with her psychological and emotional state post-assault, and upholding her credibility); George v. Edwards, No. 01 CV 6481, 2003 WL 22964391, at *3-4 (E.D.N.Y. Sept. 4, 2003) (permitting expert testimony on rape trauma syndrome to help the jury understand the victim's delay in reporting without prejudicing the defendant).

The Court therefore rejects respondent's arguments that the only possible explanation for the delay in the victim's examination is that the victim was lying and Sicha-Saca was extorting him. The above cases suggest multiple alternative explanations for such a delay; whether or not they apply to this particular case is not for this Court to decide. On a petition for extradition, the Court may not weigh the credibility of evidence, including regarding Sicha-Saca's potential motivations in waiting for several months before taking her daughter to be examined. See, e.g., United States v. Hunte, 2006 WL 20773, at *6. Rather, the Court's job is merely to determine whether, given the evidence provided by the Requesting State, there is probable cause that the respondent committed the crime charged. See 18 U.S.C. § 3184. Here, the evidence Ecuador has provided – including sworn statements from the victim and her mother, along with the reports of the victim's medical and psychological examinations in which medical providers report findings of sexual activity in an 11-year-old child, including serious infection and signs of psychological distress, and the police report corroborating the victim's story about the location of

the alleged crime – more than sufficiently establishes the relatively low bar of probable cause that Urgilez Sarmiento committed rape.  It is up to the Ecuadorian courts, and not this Court, to determine whether he is indeed guilty of that crime.

V.    Identity

Since this Court has found that the Treaty is in full force (see supra at 7), that this Court has the authority to conduct extradition proceedings and has personal jurisdiction over Urgilez Sarmiento (see supra at 6-7), that the crime charged in the warrant is an offense covered by the Treaty (see supra at 8-13), and that there is probable cause to believe that the crime was committed by Urgilez Sarmiento based on competent legal evidence presented to the Court (see supra at 13-20), the only remaining issue is whether the individual before the Court is the same person who is alleged to have committed the crime charged.  See Bingham v. Bradley, 241 U.S. at 516-17; Ornelas v. Ruiz, 161 U.S. at 508-09; see also United States v. Samuels, 2009 WL 367578, at *3-4 (holding, based on the undisputed information provided by the Canadian government, that there was probable cause to believe that the individual before the Court was, in fact, the same individual Canada sought to extradite).

The evidence before this Court clearly establishes that the individual before the Court is the Juan Fernando Urgilez Sarmiento who was described in the extradition request sent to law enforcement by the Ecuadorian Embassy.  The photographs of the extraditee received from the Ecuadorian authorities, which were provided to the Court, appear to depict the same individual currently before the Court (see Compl., Ex. A, Interpol Letter at 51, 131), and the respondent has not raised identity as an issue in this case.

Accordingly, having examined the totality of the information before this Court, I find that the individual before the Court is the Juan Fernando Urgilez Sarmiento sought by Ecuadorian

authorities for the crime detailed in the extradition papers.

VI.   Duty of Non-Inquiry

Finally, Urgilez Sarmiento argues that, even if the Court were to decide that extradition is appropriate, the Court should stay any extradition order until respondent "completes his appellate process before the Board of Immigration Appeals" for his denied political asylum application. (Opp. at 8 (citing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Art. 1, 3, Dec. 10, 1984, 1465 U.N.T.S. 113, 113-14 ("CAT"), which prohibits extraditing individuals to countries where they face torture)).  Respondent requests that the Court consider that Ecuador "is in a dangerous state of emergency" and that Ecuadorian "prison guards are known to abuse prisoners."  (Reply at 3 (referencing various United States Department of State reports)).

However, according to the well-established "rule of non-inquiry," a court may not inquire into the conditions of the country to which the United States is extraditing a fugitive, including "the requesting country's criminal justice system" or "the possibility that the extraditee will be mistreated if returned."  Matter of Extradition of Sandhu, 886 F. Supp. 318, 321-22 (S.D.N.Y. 1993).  Recently, in Gomez v. United States, the Second Circuit upheld the magistrate judge's denial of respondent's request for a stay of extradition to Ecuador based on the CAT.  140 F.4th at 59.  In so holding, the Second Circuit noted that "'the degree of risk to [respondent's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch'" and that "'[i]t is the function of the Secretary of State' – not the courts – 'to determine whether extradition should be denied on humanitarian grounds.'"  Id. (first quoting Sindona v. Grant, 619 F.2d 167, 174 (2d Cir. 1980), then quoting Ahmad v. Wigen, 910 F.2d 1063, 1067 (2d Cir. 1990))).

Given this clear rule, the Court declines to consider potential humanitarian concerns in Ecuador or respondent's arguments that he was not afforded due process in the Ecuadorian courts (see Opp. at 7), or to stay extradition on those bases.  See, e.g., In re Extradition of Skaftouros, 643 F. Supp. 2d at 544-45 (noting that "'review[ing] compliance with foreign criminal procedure' falls outside the role of an extradition court" because, absent a treaty provision requiring otherwise, a United States court may not "'assume the responsibility for supervising the integrity of the judicial system of another sovereign nation'" (first quoting In re Assarsson, 635 F.2d 1237, 1244 (7th Cir. 1980), then quoting Jhirad v. Ferrandina, 536 F.2d at 484-85)).

CONCLUSION

Having considered the totality of the evidence, the Court finds that there is sufficient evidence to believe that the individual before the Court, Juan Fernando Urgilez Sarmiento, is the individual sought by Ecuadorian authorities to answer the charges detailed in the extradition request; that the charged crime is an extraditable offense under the existing Treaty between Ecuador and the United States; and that there is probable cause to believe that the individual before this Court, Juan Fernando Urgilez Sarmiento, committed the crime as detailed in the papers.

Based on the foregoing, the government's petition for a certificate of extraditability for Juan Fernando Urgilez Sarmiento is GRANTED, and the Court hereby certifies this matter to the Secretary of State for surrender of respondent to Ecuadorian authorities in accordance with the Treaty.  As discussed above, pursuant to the duty of non-inquiry, the Court declines to stay the extradition for any reason.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

23

**SO ORDERED.**

Dated: Brooklyn, New York
      November 5, 2025

                           /s/ Cheryl L. Pollak
                           Cheryl L. Pollak
                           United States Magistrate Judge
                           Eastern District of New York